Estate of Louis Bendet, Deceased, Bessie Bendet, Executrix v. Commissioner.
Estate of Louis Bendet v. Commissioner
Docket No. 7188.
United States Tax Court
1946 Tax Ct. Memo LEXIS 208; 5 T.C.M. (CCH) 302; T.C.M. (RIA) 46098; April 25, 1946
Aaron Holman, Esq., 25 Broadway, New York, N. Y., for the petitioner. Clay C. Holmes, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in estate tax in the amount of $36,431.33. The issues for decision are whether the Commissioner erred by including the following amounts in the decedent's gross estate: (a) $2,629.68, representing cash contained in a safe deposit box at the time of the decedent's death; (b) $27,967.01, *209 the balance at the time of the decedent's death in six different savings accounts and banks in the joint name of the decedent and his wife; (c) $126,437.19, instead of $103,687.19, as the fair market value of the decedent's interest in the partnership known as Louis Bendet Company; and (d) $68,392.39, representing the decedent's wife's interest in the partnership business. It is stipulated that the petitioner has paid $8,000 of the deficiency and is entitled to an additional deduction for administration expenses. Findings of Fact Louis Bendet, the decedent, died on March 2, 1942. The estate tax return was filed with the collector of internal revenue for the third district of New York. The decedent rented a safety deposit box in a New York bank on May 23, 1933, with the provision that his wife, Bessie, could also have access to the box. This box contained, inter alia, at the time the decedent died $2,629.68 in cash. This cash belonged to Bessie, who had marked it with her name and had placed it there prior to the decedent's death. It was her separate property. Some of the cash had not come from the decedent, but the larger part of it had been received by Bessie at various times *210 prior to the decedent's death from the decedent who had given the money to her to be used by her as her own for such purposes as she might desire. She placed the cash in the safety deposit box for safe keeping. Bessie opened six savings accounts in six different banks, each in her own name. A large part of the money which she deposited in those accounts did not come directly or indirectly from the decedent. Some of the money deposited in those accounts was money which she had saved from funds given her from time to time by the decedent for her personal and family living expenses. Such deposits came from a checking account which she maintained in her own name. Bessie, pursuant to the advice of her attorney, went to the banks prior to 1942 and had the accounts changed so as to show the decedent's name, along with her own, as the joint owner of the accounts. The total balance in the six accounts at the time of the decedent's death was $27,967.01. The Commissioner, in determining the deficiency, included that amount in the gross estate under section 811 (e), I.R.C. as funds in a joint bank account contributed by the decedent. The Commissioner, in determining *211 the deficiency, added $22,750 to the net estate with the explanation that the decedent's interest in the partnership of Louis Bendet Company, "after deducting from the full value of the partnership $68,392.39, representing the alleged interest of the wife in the partnership, has a value of $126,437.19." This item was shown on the return at $103,687.19. The value of the decedent's interest in the partnership, excluding the $68,392.39, was $103,687.19 at the date of his death. The decedent had been engaged for many years in the business of manufacturing ladies' underwear under the trade name of Louis Bendet Company. He withdrew $44,000 of cash from that business on February 21, 1941 and gave it to his wife, Bessie. The two of them then entered into an agreement on that same day, but dated February 1, 1941, under which they agreed to engage as partners for five years in the business of manufacturing and selling ladies' underwear under the trade name of Louis Bendet Company. The decedent was to devote his full time to the business which was to be under his sole management. He was to receive a certain portion of the profits and the remaining profits were to be divided between the two *212 partners in proportion to the current capital investment of each. Losses were to be shared in proportion to their capital investments. The net assets of the business were to be divided upon termination of the partnership in proportion to the capital investments of each. The agreement provided for arbitrators to settle any disputes between the partners, but the conduct of the business by the decedent was to continue. Bessie contributed $44,000 in cash on February 24, 1941 and the decedent contributed the assets of the business which amounted to $83,793.86. Profits of $9,116.34 for 1941 and $3,026.05 for the first two months of 1942 were credited to Bessie's account on the books of the business. There was nothing in the partnership agreement to prevent her from withdrawing funds, but actually she never withdrew any funds from the business and she never took any part in conducting the business. She reported on her income tax returns for 1941 and for 1942 the aforesaid amounts credited to her account. The partnership returns showed the distributable shares of the two partners. The transfer of the $44,000 was reported on a gift tax return showing no tax due. The total capital account *213 in the name of Bessie at the time of the decedent's death amounted to $56,142.39. The transfer of the $44,000 from the decedent to Bessie on February 21, 1941, was not made in contemplation of death. The decedent, up to the time of his death, personally managed, controlled, and operated the business of Louis Bendet Company and was largely responsible for its earnings. The transfer of the $44,000 from the decedent to Bessie and the execution of the agreement of February 21, 1942 was done upon the advice of attorneys for the sole purpose of reducing the decedent's income tax. The amount of $44,000 was selected because that was the largest amount which could be transferred without incurring liability for gift tax. The stipulation of the parties is incorporated herein in its entirety. Opinion MURDOCK, Judge: The record shows that the cash in the joint safety deposit box belonged exclusively to Bessie and that the decedent had no interest whatsoever in that property. Therefore, the Commissioner erred in including it in the decedent's estate for estate tax purposes. Section 811 (e) (1) of the Internal Revenue Code provides that the gross estate of a decedent *214 shall include any interest in property held as joint tenants by the decedent and any other person or as tenants in the entirety by the decedent and his wife "or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth." This is a broad and sweeping provision. $27,967.01 was deposited at the time of the decedent's death with a person carrying on the banking business. It was deposited in the joint names of the decedent and his wife, Bessie, and was payable to either or the survivor. A part thereof originally belonged to the decedent and, as to that part, it can not be shown that it never was received or acquired by Bessie from the decedent. The petitioner concedes that it came from the decedent. Therefore, under this provision of the statute it must be included in his gross estate. It makes no difference under this statute that the decedent had given the money to Bessie to do with as *215 she pleased and Bessie voluntarily placed it in this joint account. It is not possible to determine from this record exactly how much of the money came from the decedent and how much never came from the decedent. The best approximation that we can make is that one-half came from the decedent and one-half did not. The parties have stipulated the value of the assets of the business of Louis Bendet Company exclusive of good will at the date of the death of the decedent. The Commissioner determined that the business had, in addition, good will and now contends that the value of the good will was $35,000. The petitioner contends that there was no good will attaching to the business. She has introduced evidence to show that a fair return on capital, considering the risks of the business, would be between six and ten per cent and reasonable annual compensation for the decedent would have been between $20,000 and $30,000. This evidence indicates that there was no good will. Subsequent large earnings were explained as due to the war. The evidence supports the petitioner's contention on this point and a finding has been made accordingly. The evidence shows clearly that the transfer of $44,000 *216 in cash from the decedent to Bessie on February 21, 1941 was not made in contemplation of death. It would be inconsistent with the stipulation to hold that that transfer was incomplete in any respect or that it lacked bona fides. It has been stipulated, for example, that Bessie contributed the $44,000 to the partnership on February 24, 1941. She would first have to own it in order to contribute it. The Commissioner also contends that the decedent had such control over the capital of the business, including that standing in Bessie's name, that the transfer of that capital did not take effect in possession or enjoyment until the decedent died. The agreement of February 21, 1941 gave Bessie rights in connection with the capital not dependent upon the death of the decedent. She "contributed" the larger part of it to the business. She was not precluded from withdrawing amounts from her account. It can not be said that any part of the $56,142.39 standing to her account on March 2, 1942 represented a transfer intended to take effect in possession or enjoyment at or after the death of the decedent within the meaning of section 811 (c). Decision will be entered under Rule 50.